# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISAIAH III SMITH, | Case No. 1:19-cv-01085-SKO |
| Plaintiff, | |
| v. | ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| ANDREW SAUL, Commissioner of Social Security, | |
| Defendant. | (Doc. 1) |

_____/

## I.   INTRODUCTION

Plaintiff Isaiah Iii Smith ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. § 1383(c). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

///

---

[1] The parties have consented to the jurisdiction of the U.S. Magistrate Judge. (Docs. 6, 8.)

## II. BACKGROUND

Having filed five previously-denied applications for SSI, Plaintiff protectively filed the current SSI application on October 23, 2015, alleging disability as of August 27, 2015, due to right wrist injury, right hip injury, head injury, bone issues, high blood pressure, neck issue, arthritis, left knee issue, and cataracts. (Administrative Record ("AR") 18, 209, 210, 223, 224, 227, 341, 342, 336, 337, 371, 377.) Plaintiff was born on October 9, 1965, completed high school, and previously worked as a grocery store clerk and as a production worker at a warehouse. (AR 28, 209, 223, 336, 342, 343, 356, 377)

### A. Relevant Medical Evidence[2]

#### 1. State Agency Physicians

On March 4, 2016, C. Bullard, M.D., a state agency physician, reviewed the record and assessed Plaintiff's residual functional capacity (RFC).[3] (AR 215–18.) Dr. Bullard and found that Plaintiff could (1) occasionally lift and/or carry 20 pounds and frequently 10 pounds; (2) stand and/or walk for about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; (4) not push or pull with his right upper extremity; (5) occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; (6) not climb ladders, ropes, and scaffolds; (7) not work above shoulder level with his right upper extremity; and (8) not be exposed to working machinery and heights. (AR 215–17.) Upon reconsideration on June 15, 2016, another state agency physician, R. Fast, M.D., reviewed the record and affirmed Dr. Bullard's findings. (AR 231–33.)

State agency physician G. Ikawa, M.D., reviewed the record and assessed Plaintiff's mental RFC on March 3, 2016. (AR 218–19.) Dr. Ikawa opined that Plaintiff was capable of

---

[2] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

[3] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8p (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

performing simple, repetitive, tasks.  (AR 218, 219.)  Upon reconsideration on June 20, 2016, another state agency physician, E. Murillo, M.D., reviewed the record and affirmed Dr. Ikawa's findings.  (AR 233–34.)

### 2. Tulare Regional Medical Center

On June 16, 2016, Plaintiff presented for a physical therapy evaluation due to complaints of neck pain.  (AR 623–26.)  A physical examination showed reduced range of motion in his cervical spine, decreased strength in his right shoulder with abduction, and tenderness to the right side of his C7 spine.  (AR 624.)  Plaintiff was recommended to attend physical therapy twice a week for six weeks to decrease his neck pain and increase its range of motion.  (AR 625.)  After missing several appointments (*see* AR 627), he was discharged for non-compliance in August 2016 (AR 622.)

### 3. Kaweah Delta Health Care District

On October 21, 2016, Plaintiff was transported to the emergency department after taking medication in attempt to commit suicide following an argument with his wife.  (AR 546–82.)  He admitted to wanting to kill himself due to an increase in the level of stress at home.  (AR 546.)  On examination, Plaintiff appeared sad and his mood and affect were depressed, tearful, and crying.  (AR 547.)

On October 22, 2016, Vasileios Panagopoulous, M.D., performed a psychiatric consultation and found Plaintiff "calm at times, irritable at other times," yet cooperative, with poor eye contact, slow speech, and poor grooming.  (AR 556.)  His flow and content of thought was normal, with no hallucinations or delusions noted.  (AR 556.)  Plaintiff had a depressed mood and dysthymic and dysphoric affect, with normal attention but poor insight and judgment.  (AR 556.)  Dr. Panagopoulous found that Plaintiff's presentation and history were "consistent with the diagnosis of unspecified depressive disorder [and] alcohol use disorder."  (AR 556.)  Plaintiff was prescribed medication to address his agitation and was recommended for inpatient admission with the mental health department.  (AR 547–48, 556.)

Mandeep Bragga, M.D., performed a psychiatric evaluation on October 23, 2016.  (AR 558–62.)  On mental status examination, Dr. Bragga found Plaintiff cooperative, yet disheveled,

withdrawn, and guarded. (AR 559.) Plaintiff's eye contact was limited but his speech within normal limits. (AR 559.) His thought process was disorganized, but no overt psychosis was noted. (AR 559.) Plaintiff's mood was depressed and his affect sad, with poor insight and judgment. (AR 5559.) Dr. Bragga noted Plaintiff continued to exhibit symptoms and behaviors that represented a current danger to himself. (AR 559–60.) Plaintiff was diagnosed with severe and recurrent major depressive disorder without psychotic features. (AR 559.) He was prescribed medication for depression. (AR 560.)

Dr. Bragga again examined Plaintiff on October 24, 2016, and found him pleasant, cooperative, and engaged, with good eye contact. (AR 569.) His mental status examination was normal, with elevated, full, appropriate, and labile mood. (AR 569.) Plaintiff denied current thoughts of harming himself and felt "hopeful." (AR 569.) Dr. Bragga noted that Plaintiff "achieved a fair level of improvement during this acute hospitalization" and his "long term prognosis is good." (AR 569.) Upon discharge to the care of his mother, Plaintiff was observed to be "more energetic" and "significantly less guarded." (AR 582.) He was advised to follow up with a psychiatrist on an outpatient basis. (AR 581.)

### 4. Altura Centers for Health

On January 3, 2017, Plaintiff complained of anxious/fearful thoughts, depressed mood, difficulty concentrating, difficulty falling asleep, diminished interest or pleasure, fatigue, loss of appetite, and restlessness. (AR 702.) He denied thoughts of death or suicide. (AR 702.) Plaintiff also complained of neck and back pain, which were "mild" and "stable," respectively. (AR 702.) He reported attending physical therapy, but had to stop due to "issues with transportation." (AR 702.) Victor Sunga, M.D.'s examination of Plaintiff's musculoskeletal system showed mildly reduced range of motion in his spine, mild arthritis in his hands, and weak muscles in his left knees. (AR 705.) He was again referred to physical therapy and advised to take ibuprofen as needed. (AR 705–06.)

Dr. Sunga's psychiatric examination of Plaintiff showed "[i]nappropriate mood and affect," and based on his health questionnaire Plaintiff was assessed with moderately severe depression. (AR 705.) Dr. Sunga directed him to continue his medication and to follow up with

4

his psychiatrist. (AR 706.)

Plaintiff underwent an MRI of his cervical spine on February 13, 2017, which showed mild spondylosis that was most pronounced from C3-4 through CS-6, and areas of central canal stenosis without evidence of myelomalacia. (AR 652.)

Plaintiff presented to Dr. Sunga for a follow-up appointment on February 28, 2017. (AR 692.) His chief complaints were hypertension and arthralgias (joint pain). (AR 692.) Dr. Sunga found Plaintiff's gait was antalgic and unstable, with mild pain in his cervical spine with motion. (AR 694.) He had moderately reduced range of motion in his lumbar spine and mildly reduced range of motion in his thoracic spine, lumbar spine, both shoulders, and both knees. (AR 694.) Dr. Sunga found mild arthritis in Plaintiff's hands and weakness in his hips and knees. (AR 694.) He recommended treatment with ibuprofen and physical therapy. (AR 695.)

At a follow up appointment with Dr. Sunga on August 5, 2017, Plaintiff complained of allergies and hypertension. (AR 679.) A physical examination showed muscle spasm in Plaintiff's lumbar spine with mildly reduced range of motion, and mild arthritis in his hands. (AR 681.)

Plaintiff presented to Bryan Cruz, M.D. on August 31, 2017, requesting "general assistance" forms, but refused to answer questions, would not give a urine sample, became irate, and used profanity. (AR 674.) He left without an examination or the paperwork. (AR 674.) Dr. Cruz noted that if Plaintiff returned, a referral to a counselor for his anger would be recommended. (AR 677.)

On September 16, 2017, Plaintiff presented to Dr. Sunga requesting disability paperwork for his neck pain, lower back pain, and depression. (AR 668.) Dr. Sunga's examination showed Plaintiff's tenderness to Plaintiff's cervical spine and mildly reduced range of motion. (AR 671.) He also had mildly reduced range of motion in Plaintiff's lumbar spine, as well as his hands and knees. (AR 671.) Plaintiff exhibited weakness in his knee muscles. (AR 671.) Plaintiff indicated he was using marijuana for pain control. (AR 671.)

On November 18, 2017, Dr. Sunga noted Plaintiff's back pain was stable, with his symptoms relieved with medication. (AR 661.) A physical examination showed muscle spasm

in Plaintiff's lumbar spine with mildly reduced range of motion, mild arthritis and pain in his hands with motion. (AR 665.) Dr. Sunga recommended ibuprofen for Plaintiff's chronic low back pain, as well as back stretching exercises. (AR 665.)

**B.   Administrative Proceedings**

The Commissioner denied Plaintiff's current application for benefits initially on March 5, 2016, and again on reconsideration on June 28, 2016. (AR 18, 240–43, 248–53.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 260–74.)

On April 11, 2018, Plaintiff appeared with counsel and testified before an ALJ as to his alleged disabling conditions. (AR 41–68.) A vocational expert ("VE") also testified at the hearing. (AR 68–74.)

**C.   The ALJ's Decision**

In a decision dated August 21, 2018, the ALJ found that Plaintiff was not disabled. (AR 18–30.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 416.920(a)(4). (AR 20–26.) The ALJ determined that Plaintiff had not engaged in substantial gainful activity since October 23, 2015, the application date (step one). (AR 21.) At step two, the ALJ found Plaintiff's following combination of impairments to be severe: a history of gunshot wound with arthritis and impingement of the right shoulder; a history of heart weakness with hypertension; degenerative disc disease of the lumbar and cervical spine; osteoporosis; a history of 2nd left toe amputation; dermatitis of the left lower extremity; depressive disorder; anxiety disorder;  personality disorder; borderline intellectual functioning; psychotic disorder; marijuana and alcohol dependence; amphetamine abuse; gastroesophageal reflux disease; myofascial pain syndrome; facet arthropathy; polyarthralgia; cataracts; and angioedema. (AR 21.) Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 21–23.)

The ALJ then assessed Plaintiff's RFC and applied the RFC assessment at steps four and five. *See* 20 C.F.R. §  416.920(a)(4) ("Before we go from step three to step four, we assess your

residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."); *see id*. § 416.920(a)(4) (same). The ALJ determined that Plaintiff had the RFC:

> to perform a wide range of light work as defined in 20 CFR [§] 416.967(b): [Plaintiff] can lift and/or carry 20 pounds occasionally and 10 pounds frequently. The claimant can stand and/or walk or sit for 6 hours in a workday.  He cannot climb ladders, ropes, or scaffolds.  [Plaintiff] can perform postural activities occasionally like climbing ramps and stairs, stooping, crouching, crawling, and kneeling.  [Plaintiff] can no more than occasionally perform overhead reaching with the right upper extremity.  He must avoid concentrated exposure to temperature extremes, dampness, vibrations, and hazards.  He cannot understand, remember or carry out complex and detailed job instructions or make judgments on  complex and detailed work-related tasks or cope with the stress normally associated with skilled or semi-skilled employment.  He cannot maintain concentration or attention or persistence and pace for complex and detailed work-related job assignments. Moreover, [Plaintiff] can have no more than occasional face-to-face interactions with the general public, coworkers,  and supervisor.

(AR 23.)  Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" he rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record . . . ."  (AR 24.)

The ALJ found that Plaintiff could not perform his past relevant work as a grocery bagger (step four). (AR 27–28). Nonetheless, the ALJ determined that Plaintiff retained the capacity to perform other work that existed in sufficient numbers in the national economy (step five). (AR 28.) In making these determinations, the ALJ posed a series of hypothetical questions to the VE based upon Plaintiff's RFC. (AR 68–74.) In response, the VE testified that a person with the specified RFC could not perform Plaintiff's past work, but could perform jobs such as cleaner, mail clerk, and packing line worker. (AR 71–72.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on June 4, 2019. (AR 6–11.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 416.1481.

### III.     LEGAL STANDARD

**A.    Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if he or she is

unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920. The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

8

**B.   Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citing *Tackett*, 180 F.3d at 1098). "Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund*, 253 F.3d at 1156 ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.  DISCUSSION

Plaintiff contends that there is no substantial evidence to support the ALJ's RFC assessment of Plaintiff's mental and physical limitations. (Doc. 21 at 9–15; Doc. 25 at 5–6.) He points out that "no medical professional assessed the impact of Plaintiff's mental diagnoses and symptoms on functionality," and that the assessments of Plaintiff's physical limitations by the State agency non-examining medical consultants were "outdated" because they did not account for subsequent medical records. (Doc. 21 at 10, 13–14.) Plaintiff submits that the ALJ should have "obtain[ed] an opinion from an examining source or submit[ted] the updated records to a medical professional for interpretation." (Doc. 21 at 11. *See also* Doc. 25 at 5.) Instead, according to Plaintiff, the ALJ relied on his lay interpretation of the subsequent medical evidence and erred in failing to develop the record further. (*See* Doc. 21 at 10, 15; Doc. 25 at 6.) Plaintiff contends that because the ALJ failed to develop the record, substantial evidence does not support the ALJ's RFC determination and the matter should be remanded for further administrative proceedings. (*See* Doc. 21 at 13, 15.)

The Commissioner responds that Plaintiff failed to preserve the issue for appeal because his counsel told the ALJ at the hearing that the record was complete. (Doc. 22 at 6–8.) The Commissioner contends, alternatively, that no duty to develop the record arose because the ALJ considered all of the evidence in the record, including the post-reconsideration records, and interpreted them in conjunction with the non-examining consultant's opinions, on which he reasonably relied, in assessing Plaintiff's RFC. (*Id.* at 8–12.) The Commissioner maintains that the ALJ's RFC assessment was therefore based on substantial evidence supported from interferences reasonably drawn from the record and should be affirmed. (*Id.*)

The Court addresses the parties' contentions below, and finds that reversal is not warranted.

**A.  Plaintiff's Challenge to the Incompleteness of the Record Has Not Been Preserved**

Preliminarily, as a rule, "when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999). Here, as the Commissioner points out, Plaintiff

10

was represented by counsel at the administrative hearing and specifically stated that the record was complete when asked by the ALJ.[4] (AR 39 ("ALJ: Is the record complete? ATTY: Yes, it is. ALJ: Outstanding.").); *see Meanel*, 172 F.3d at 1115; *Howard v. Astrue*, 330 F. App'x 128, 130 (9th Cir. 2009) (issue waived because attorney had opportunity to raise it at administrative hearing but did not do so); *Ryan Patrick A. v. Berryhill*, No. EDCV 17-2526-JPR, 2019 WL 1383800, at *7 (C.D. Cal. Mar. 27, 2019) (issue forfeited where the plaintiff was represented by counsel at the administrative hearing, who twice stated that the record was complete); *Valdez v. Berryhill*, Case No. SA CV 16-0980 JCG, 2018 WL 317799, at *1 (C.D. Cal. Jan. 5, 2018) (issue not properly preserved where the plaintiff was represented by counsel at the administrative hearing and specifically stated he had "no objection" to the record when asked by the ALJ). Accordingly, the issue is not properly preserved for appeal.

## B. Plaintiff Has Not Demonstrated That Remand is Required

Even if the issue had not been forfeited, however, Plaintiff has not shown remand is warranted in this case.

### 1. The ALJ Had No Duty to Develop the Record

"An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *See Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). Plaintiff has not demonstrated that the record was ambiguous or inadequate to allow for proper evaluation. The ALJ summarized record evidence spanning 2015 through 2017 and found with the support of that record that Plaintiff had not established he was disabled. (AR 24–27.) The record contained what appears to be Plaintiff's complete treatment records that supported the ALJ's findings and did not present an ambiguity or inadequacy. Notably, Plaintiff failed to submit any medical opinions from a treating or examining physician as to his ability to work or his functional limitations. Because it is Plaintiff's burden to present evidence of disability, the mere absence of a report from a treating or

---

[4] The State agency determinations were made in March and June 2016. (AR 215–19, 231–34.) The evidence Plaintiff contends triggered a duty to further develop the record ranged from June 2016 to November 2017. (*See* Doc. 21 at 11, 13–14.) All of this was before the ALJ and admitted into the record that counsel deemed complete at the April 11, 2018 hearing. (AR 39.)

11

examining physician does not give rise to a duty to develop the record; instead, that duty is triggered only where there is an inadequacy or ambiguity. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Alvarez v. Astrue*, No. 1:08-cv-01205-SMS, 2009 WL 2500492, at *10 (E.D. Cal. Aug. 14, 2009) (finding absence of report from treating physician did not give rise to a duty to develop the record where record contained opinions of the state agency physicians and plaintiff's complete treatment records); *see also* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); 20 C.F.R. § 416.920(a) ("[Y]ou have to prove to us that you are . . . disabled . . . ."). Indeed, as noted above, when the ALJ asked the Plaintiff's attorney at the hearing whether the record was complete, he responded "Yes, it is." *See Findley v. Saul*, No. 1:18-CV-00341-BAM, 2019 WL 4072364, at *6 (E.D. Cal. Aug. 29, 2019) (finding the ALJ was not obligated to further develop the record where counsel stated at the hearing that the record was complete). *See also Randolph v. Saul*, 2:18-cv-00555-CLB, 2020 WL 504667, at *8 (D. Nev. Jan. 31, 2020) (same).

Contrary to Plaintiff's assertion, an updated opinion is not required simply because additional medical evidence is received after the State agency physicians had already reviewed Plaintiff's records. *See de Hoog v. Comm'r of Soc. Sec.*, No. 2:13–CV–0235–KJN, 2014 WL 3687499, at *7 (E.D. Cal. July 23, 2014). Such an occurrence is quite common. *See id*. (explaining that "[i]n virtually every case further evidence is received after the [S]tate agency physicians render their assessments—sometimes additional evidence and records are even received after the ALJ hearing. For that very reason, the ALJ is tasked with considering the evidence in the record as a whole."). Plaintiff cites cases in which a duty to develop the record arose (*see* Doc. 21 at 10, 11, 13), but these were limited to situations where the subsequent "objective evidence suggest[ed] a condition that could have a material impact on the disability decision," *Molina v. Berryhill*, No. 2:17-CV-01991 CKD, 2018 WL 6421287, at *3 (E.D. Cal. Dec. 6, 2018), or where the later records consisted of "raw medical data," *Mack v. Saul*, No. 1:18-cv-01287-DAD-BAM, 2020 WL 2731032, at *2 (E.D. Cal. May 26, 2020) (citations omitted). *See Escudero v. Comm'r of Soc. Sec.*, No. 1:18-CV-01136-EPG, 2019 WL 4917634, at *2 (E.D.

Cal. Oct. 4, 2019) (finding the ALJ improperly failed to develop the record where descriptions of some of the medical evidence post-dating the opining physicians' opinions was not "self-evident" and instead "appear[ed] to be very medical in nature and not susceptible to a lay understanding."); *Goodman v. Berryhill*, No. 2:17-CV-01228 CKD, 2019 WL 79016, at *5 (E.D. Cal. Jan. 2, 2019) (subsequent medical evidence giving rise to duty to develop the record documented "significant medical events relevant to plaintiff's physical condition.")

Here, in contrast, the evidence Plaintiff directs the Court to review is relatively unremarkable, straightforward, and, to some extent, based on subjective complaints similar to those discredited by the ALJ[5], including: (1) a referral for physical therapy for neck pain in June 2016, from which he was discharged for non-compliance after missing appointments (AR 622, 625, 627); (2) records from his one-time hospitalization in October 2016 for suicidal ideation (AR 546–82), after which his mental status was normal, having "achieved a fair level of improvement during this acute hospitalization" with his "long term prognosis [] good" (AR 569) (3) a treatment note from January 2017 wherein, based on his self-reports of depressive and anxiety symptoms, Plaintiff was assessed with depression (AR 702, 705); (4) treatment records from January–November 2017 showing mild neck and back pain that was stable and relieved with over-the-counter medication,[6] with mild to moderately reduced range of motion (AR 661, 665 671, 681, 694, 702); and (5) a February 2017 MRI of his cervical spine that showed only mild findings (AR 652).  None of these records establish the existence of any new condition not assessed by the ALJ, or show a worsening of Plaintiff's existing conditions.  Plaintiff does not demonstrate otherwise.  The Court therefore finds that the ALJ was not obligated to further develop the record.

### 2. The ALJ Did Not Err in Formulating Plaintiff's RFC

An RFC "is the most [one] can still do despite [his or her] limitations" and it is "based on

---

[5] The ALJ found Plaintiff's subjective complaints were "not entirely consistent with the medical evidence and other evidence in the record . . . ." (AR 24.)  Plaintiff does not challenge the sufficiency of the evidence supporting the ALJ's adverse credibility finding or the adequacy of the ALJ's reasons given to explain this finding.  The Court therefore considers the ALJ's unchallenged credibility finding to be binding.  *See, e.g., Stanley v. Astrue*, No. 1:09–cv–1743 SKO, 2010 WL 4942818, at *6 (E.D. Cal. Nov. 30, 2010).

[6] *See Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for purposes of determining eligibility for SSI benefits.").

all the relevant evidence in [one's] case record," rather than a single medical opinion or piece of evidence. 20 C.F.R. § 416.945(a)(1); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."). Further, an ALJ's RFC determination need not precisely reflect any particular medical provider's assessment. *See Turner v. Comm'r Soc. Sec. Admin.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010) (the ALJ properly incorporated physician's observations in the RFC determination while, at the same time, rejecting the implication that plaintiff was unable to "perform simple, repetitive tasks in an environment without public contact or background activity").

According to the record, the only expert medical opinions regarding Plaintiff's RFC are those of the State agency physicians, Drs. Bullard, Ikawa, Fast, and Murillo. (AR 27.) The ALJ considered the opinions of physical consultants Drs. Bullard and Fast and assigned them "great weight," except for their opined limitation regarding Plaintiff's right shoulder, of which the ALJ found Plaintiff retained "at least occasional use" in light of his limited treatment for a right shoulder condition. (AR 27.) In assessing the opinions of Drs. Bullard and Fast, the ALJ acknowledged that these physicians were not privy to the entire record, but nevertheless found their opinions to be consistent with the existing medical evidence and the product of their specialization and experience in evaluating impairments and claimants in the context of determining disability. (AR 27.) The ALJ assigned "significant, but less weight" to the opinions of mental consultants Drs. Ikawa and Murillo, finding that "slightly more restrictive social limitations are justified by [Plaintiff's] mental health records." (AR 27.)

Plaintiff's primary criticism of the ALJ's RFC assessment is his claim that, because the State agency physicians on whose opinions the ALJ relied did not consider subsequent records, the RFC was the result of the ALJ improperly imposing his own lay interpretation of the medical evidence. (*See* Doc. 21 at 11–12, 14; Doc. 25 at 6.) This argument is unavailing.

The nature of the ALJ's responsibility is to interpret the evidence of record, including medical evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Such a responsibility does not result in the ALJ committing legal error when he assesses an RFC that is consistent with

the record. *See Mills v. Comm'r of Soc. Sec.*, No. 2:13-CV-0899-KJN, 2014 WL 4195012, at *4 (E.D. Cal. Aug. 22, 2014) ("[I]t is the ALJ's responsibility to formulate an RFC that is based on the record as a whole, and thus the RFC need not exactly match the opinion or findings of any particular medical source.") (citing *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989)).

Here, the ALJ considered not only the opinions of the state agency physicians, but also evaluated the objective medical evidence post-dating their opinions, including that which Plaintiff cites in his briefing. (*See* AR 26–27 (discussing records showing Plaintiff's treatment for depression, his one-time hospitalization for suicidal ideation, and his complaints of neck pain); Doc. 21 at 11.) The ALJ then interpreted that evidence, as he is charged to do, and formulated Plaintiff's RFC.[7] *See, e.g., Mills,* 2014 WL 4195012, at *4 (finding argument that the ALJ was improperly attempting to "play doctor" lacked merit where the ALJ "carefully analyzed the various medical opinions, treatment records, and plaintiff's own testimony in formulating an RFC."). For example, although the ALJ assigned "significant weight" to Drs. Ikawa's and Murillo's opinions that Plaintiff was limited to simple and routine tasks, those opinions were not dispositive and the ALJ ultimately formulated an RFC that included additional social limitations. These additional restrictions accounted for Plaintiff's mental impairments by limiting him to occasional interactions with the general public, coworkers, and supervisor. (*See* AR 23.)

Plaintiff does not specify what additional functional limitations in the relatively benign records that he directs the Court to review establish that were not accounted for in the ALJ's RFC assessment. Nor does he otherwise show any inconsistency between this evidence and his RFC. Plaintiff contends that the ALJ's rejection of the right shoulder limitation opined by Drs. Bullard and Fast lacks "evidence of improvement in [his] condition or medical records documenting increased function" (Doc. 21 at 14–15), but this argument misses the mark. The ALJ rejected the right shoulder limitation not because the medical record showed Plaintiff's condition had improved, but rather because the record lacked evidence of sustained treatment for that condition—a finding that Plaintiff does not rebut. It appears that Plaintiff is advocating for an

---

[7] The ALJ's RFC assessment is also based on consideration of Plaintiff's subjective complaints, which, as noted above, the ALJ discredited (*see* AR 24) and Plaintiff does not challenge.

15

alternative interpretation of the evidence he cites in his briefing. The Court, however, will not second guess the ALJ's reasonable interpretation, even if such evidence could give rise to inferences more favorable to Plaintiff. *See Molina*, 674 F.3d at 1110.

In sum, the Court does not find error in the ALJ's reliance on the opinions of the State agency physicians and further finds that substantial evidence supports the ALJ's conclusions regarding the impact of Plaintiff's impairments on the RFC. Plaintiff may disagree with the RFC, but the Court must nevertheless uphold the ALJ's determination because it is a rational interpretation of the evidence. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

## C. Even if the ALJ Erred, Any Error is Harmless

In addition to bearing the burden of showing he is disabled, Plaintiff also has the burden of establishing that any error resulted in actual harm. *See Ludwig v. Astrue*, 681 F.3d 1047, 1054–55 (9th Cir. 2012). An "ALJ's error is harmless where it is inconsequential to the ultimate nondisability determination." *See Molina*, 674 F.3d at 1115 (quotation marks and citations omitted)); *Garcia v. Comm of Soc. Sec.*, 768 F.3d 925, 932 & n.10 (9th Cir. 2014) (harmless error analysis applies where ALJ errs by not discharging duty to develop record).

Here, even assuming the RFC was unsupported by substantial evidence because the ALJ failed to further develop the record as to certain findings made after the State agency review, Plaintiff fails to show prejudice. *See Meanel*, 172 F.3d at 1113; *Molina*, 674 F.3d at 1115. Specifically, Plaintiff fails to explain how any of the relatively unremarkable evidence post-dating the State agency physicians' opinions, described above, would materially affect the ALJ's disability determination. Thus, any error does not warrant reversal.

## V. CONCLUSION AND ORDER

After consideration of Plaintiff's and the Commissioner's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Andrew Saul, Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

Dated: **October 28, 2020**          /s/ *Sheila K. Oberto*
                                   UNITED STATES MAGISTRATE JUDGE